**CULLEN et al. v. BOWLES, Adm'r, Office of Price Administration.**

No. 253.

Circuit Court of Appeals, Second Circuit.

April 4, 1945.

Samuel Mermin, Sp. Appellate Atty., Thomas I. Emerson, Deputy Adm'r for Enforcement, Fleming James, Jr., Director, Litigation Division, and David London, Chief, Appellate Branch, Office of Price Administration, all of Washington, D. C., Paul L. Ross, Regional Enforcement Executive, and John D. Masterton, Regional Litigation Attorney, Office of Price Administration, both of New York City, for Chester Bowles, intervenor-appellant.

James A. Beha, of New York City, for Thomas J. V. Cullen, Chapter X Trustee, petitioner-appellee.

Richard L. Rosenbaum, of New York City, for 325 East 72nd Street, Inc., debtor, appellee.

Before L. HAND, AUGUSTUS N. HAND, and CLARK, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

On May 29, 1943, the debtor, 325 East 72nd Street, Inc., filed a petition for reorganization under Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq. The petition was approved and Thomas J. V. Cullen was appointed trustee on June 3, 1943. Its principal asset was an apartment house at No. 325 East 72nd Street, Borough of Manhattan. Twenty-three of the apartments were owned by proprietary tenants who were stockholders of the debtor corporation under ninety-nine year leases and it is conceded that the rent regulations hereafter described did not apply to them. Thirty-five of the apartments were rented under written leases on an ordinary commercial basis. Only the rent of these apartments is involved in this proceeding. The reorganization had been pending for over four months when New York City was declared a Defense Rental Area, and the Emergency Price Adminis-

trator issued rent regulations on October 8, 1943, effective November 1, 1943. These regulations froze rentals at the level of March 1, 1943. Of the thirty-five apartments leased on a commercial basis there were on November 23, 1943 ten where the rentals were higher than the maximum rental allowable under the Emergency Price Control Act and the rent regulations promulgated thereunder. On an annual basis the rentals charged by the trustee exceeded the maximum prescribed rentals by $2,661, but were found by the District Court to be $1,084 less than the fair and comparable rental value for such premises.

The trustee went into possession of the above premises on June 4, 1943, and by petition filed in the District Court on November 23, 1943, sought to have it determined whether he was subject to the Emergency Price Control Act of 1942, 50 U.S.C.A.Appendix § 901 et seq., and the rent regulations for housing thereunder, or was only subject to the order of the Bankruptcy Court under the general provisions of Chapter X of the Bankruptcy Act. His petition also sought to obtain an order authorizing him to collect the rents chargeable under these existing leases and directing him to abstain from filing notices of maximum rents and registration statements under the regulations of the Office of Price Administration.

The District Court held that the Emergency Price Control Act, and the regulations under it, are not controlling because (1) it does not repeal expressly or impliedly any portion of the Bankruptcy Act, (2) the property and its income are vested in and subject to the jurisdiction of the Bankruptcy Court, and (3) the jurisdiction to determine whether or not a plan of reorganization is fair, equitable and feasible is solely in that court and cannot be shared with any other tribunal or administrative body.

The District Court further held that it did not declare the Emergency Price Control Act or any regulation promulgated thereunder invalid or to go counter to Section 204(d) thereof, 50 U.S.C.A.Appendix § 924(d), but merely held that the Emergency Price Control Act did not apply because there had been no repeal of any part of the Bankruptcy Act and that to imply any repeal would interfere with the control of Bankruptcy Courts over corporate reorganizations and might at times make them not feasible.

In accordance with these views the court made an order directing Thomas J. V. Cullen as trustee to collect the rents chargeable under the existing leases and to abstain from filing notices of maximum rent and registration statements under the regulations of the Office of Price Administration, and adjudging that the powers of the trustee in the present reorganization proceeding are not curtailed by the Emergency Price Control Act of 1942 and the Rent Regulations for Housing in the New York City Defense-Rental Area which had been promulgated thereunder.

We think it evident that the District Court erred in authorizing the trustee to establish or collect rents determined on a basis contrary to the regulations promulgated under the Emergency Price Control Act and in holding that a trustee in reorganization might resort to a Bankruptcy Court to obtain an adjudication as to whether he was subject to the regulations. Indeed, aside from every other consideration, Section 305 of the Act, 50 U.S.C.A.Appendix § 945, would seem to negative the conclusion reached by the court below when it says: "No provision of law in force on the date of enactment of this Act shall be construed to authorize any action inconsistent with the provisions and purposes of this Act * * *." Moreover, Section 204(d) of the Act provides in part as follows:

"* * * The Emergency Court of Appeals, and the Supreme Court upon review of judgments and orders of the Emergency Court of Appeals, shall have exclusive jurisdiction to determine the validity of any regulation or order issued under section 2, of any price schedule effective in accordance with the provisions of section 206, and of any provisions of any such regulation, order, or price schedule. Except as provided in this section, no court, Federal, State, or Territorial, shall have jurisdiction or power to consider the validity of any such regulation, order, or price schedule, or to stay, restrain, enjoin, or set aside, in whole or in part, any provision of this Act authorizing the issuance of such regulations or orders, or making effective any such price schedule, or any provision of any such regulation, order, or price schedule, or to restrain or enjoin the enforcement of any such provision."

The objects of the Emergency Price Control Act are set forth therein as follows:

"Purposes; Time Limit; Applicability

"Section 1. (a) It is hereby declared to be in the interest of the national defense and security and necessary to the effective prosecution of the present war, and the purposes of this Act are, to stabilize prices and to prevent speculative, unwarranted, and abnormal increases in prices and rents; to eliminate and prevent profiteering, hoarding, manipulation, speculation, and other disruptive practices resulting from abnormal market conditions or scarcities caused by or contributing to the national emergency; to assure that defense appropriations are not dissipated by excessive prices; to protect persons with relatively fixed and limited incomes, consumers, wage earners, investors, and persons dependent on life insurance, annuities, and pensions, from undue impairment of their standard of living; to prevent hardships to persons engaged in business, to schools, universities, and other institutions, and to the Federal, State, and local governments, which would result from abnormal increases in prices; to assist in securing adequate production of commodities and facilities; to prevent a post emergency collapse of values; to stabilize agricultural prices in the manner provided in section 3; and to permit voluntary cooperation between the Government and producers, processors, and others to accomplish the aforesaid purposes. * * *"

In our opinion one of the most important purposes of establishing the Emergency Court of Appeals was to create a single court which, subject to review by the Supreme Court, can determine whether the Price Administrator keeps within his jurisdiction in preventing abnormal increases in prices and rents, and establishes regulations and makes orders that are just and based on the economic data and investigations which he is permitted to conduct under the terms of the Act and the expert information which he gains from various sources. Under Section 203(a) a procedure before the Administrator is provided for persons aggrieved by any regulation, order or price schedule and under Section 204(d) a review of the Administrator may be had in the Emergency Court of Appeals of protests to the Administrator which are denied. Only by adhering to this procedure can discordant rulings of local district courts as to practically identical issues be avoided, as well as appeals from these district courts to the various circuit courts of appeal in which conflicting decisions are likely to be rendered. There can be no doubt that if such a practice as was pursued in the case at bar were adopted it would be a serious obstacle to the efficient and uniform procedure of the Emergency Price Control Act whereby a single court is given control of the review of the orders of the Administrator.

Even in the absence of Section 204(d) we think that the Emergency Price Control Act covers trustees in bankruptcy reorganizations. Section 204(a) provides that:

"Any person who is aggrieved by the denial or partial denial of his protest may, within thirty days after such denial, file a complaint with the Emergency Court of Appeals * * * specifying his objections and praying that the regulation, order, or price schedule protested be enjoined or set aside in whole or in part. * * *"

A "person" is defined in Section 302(h) as follows:

"The term 'person' includes an individual, corporation, partnership, association, or any other organized group of persons, or legal successor or representative of any of the foregoing, * * *."

Therefore, even if the trustee's contention is correct that the Emergency Court of Appeals has not exclusive jurisdiction in cases where the Act does not apply and a regulation is for that reason void on its face, it seems evident that the rent regulations are not here void on their face. It has been generally held that federal statutes regulating business in the public interest are equally applicable when the business is run by trustees or receivers. Thus a receiver operating a railroad has been held subject to a statute prohibiting a common carrier from transporting livestock by rail from a quarantine district to another state. United States v. Nixon, 235 U.S. 231, 35 S.Ct. 49, 59 L.Ed. 207; see also Erb v. Morasch, 177 U.S. 584, 20 S.Ct. 819, 44 L.Ed. 897. Similarly the receiver of a railroad has been held subject to the federal hours of labor law. United States v. Ramsey, 8 Cir., 197 F. 144, 42 L.R.A.,N.S., 1031. In Plourde v. Massachusetts Cities Realty Co., D.C., 47 F.Supp. 668, it was held that a debtor in

possession in a reorganization proceeding had under § 77B, 11 U.S.C.A. § 207, was subject to liability for overtime compensation and liquidated damages under the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq. Judge Goddard reached the same conclusion as to the liability of a trustee in a Chapter X reorganization proceeding. In re Fulnau Corporation, S.D.N.Y., 49 F.Supp. 570. We are persuaded that these decisions express correct views and furnish sound analogies for the situation we have to deal with and that the rulings of the Supreme Court in Interstate Commerce Commission v. Jersey City, 322 U. S. 503, 64 S.Ct. 1129, 88 L.Ed. 1420, and Vinson v. Washington Gas Co., 321 U.S. 489, 64 S.Ct. 731, 88 L.Ed. 883, are in no way pertinent. In each of the latter decisions a rise in the fares of public utilities was involved and statutory procedure was prescribed which was followed. To hold that a trustee in reorganization may disregard a rent ceiling or a price ceiling because such a course will benefit the creditors he represents and advance a plan of reorganization would involve consequences most detrimental to the purposes and uniform administration of the Act.

But we are making no decision on the merits of the controversy here though we can discern no basis for the trustee's contentions unless he can show in the course of pursuing the remedies given him under the Act that the rent schedule of the Administrator is unjust and his rulings arbitrary. We decide the case solely on the ground that the only judicial remedy lay in the Emergency Court of Appeals and that the District Court was without power to determine the issue as to validity of the rent schedules.

The Supreme Court has decided that the Emergency Price Control Act is constitutional and that the provision is lawful restricting review to the Emergency Court of Appeals of the question whether any regulation, order or price schedule promulgated under the Act is valid. Lockerty v. Phillips, 319 U.S. 182, 63 S.Ct. 1019, 87 L.Ed. 1339; Yakus v. United States, 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834; Bowles v. Willingham, 321 U.S. 503, 64 S.Ct. 641, 88 L.Ed. 892.

The trustee contends that the exclusive review by the Emergency Court of Appeals does not extend to questions whether the Act is applicable and then argues that it is not applicable to trustees in reorganizations under Chapter X. He relies on the words of the Chief Justice at page 446 of his opinion in 321 U.S. 414 in Yakus v. United States, 321 U.S. 414, 446, 64 S.Ct. 660, 678, 88 L.Ed. 834, that: "We have no occasion to decide whether one charged with criminal violation of a duly promulgated price regulation may defend on the ground that the regulation is unconstitutional on its face. * * * There is no contention that the present regulation is void on its face."

Not only is it true that the rent schedules in the present case are not unconstitutional or even thought by the trustee to be so, but the caveat of the Chief Justice, limited as it was to regulations unconstitutional on their face, was made in the course of a decision dealing with a criminal prosecution and can have little, if any, bearing on questions whether a price schedule is invalid because unauthorized by the terms of the Act. A dispute as to the validity of such a schedule will often arise from the contention that the Act has not authorized it. To import a classification which would remove questions of the validity of regulations from the control of the Emergency Court of Appeals because they are not within the purview of the statute would be bound to lead to endless casuistry and destroy the uniformity of administration which the Emergency Price Control Act was designed to secure.

The views we have expressed are in general in conformity with those adopted by the Third Circuit in United States v. Pepper Bros., 3 Cir., 142 F.2d 340, and by the Fourth Circuit in Bowles v. American Brewery, 4 Cir., 146 F.2d 842. See also Rosensweig v. United States, 9 Cir., 144 F.2d 30.

For the foregoing reasons the order of the court below is reversed and the cause is remanded without prejudice, however, to the right of the intervenor to apply to the District Court for the refunding of overceiling rents received since November 1, 1943.