## FINN v. 415 FIFTH AVE. CO., Inc.

### SAME v. MEIGHAN.

#### No. 123,126.

Circuit Court of Appeals, Second Circuit.
Jan. 8, 1946.
Writ of Certiorari Denied May 6, 1946.
See 66 S.Ct. 1014.

Theodore E. Larson and Birrell & Birrell, all of New York City, for appellant 415 Fifth Avenue Co., Inc.

Louis A. Marchisio and Meighan & Necarsulmer, all of New York City, for appellant Burton C. Meighan, Jr., Trustee.

James J. Geraghty and Lorenz, Finn & Lorenz, all of New York City, for appellee.

Before L. HAND, AUGUSTUS N. HAND, and CLARK, Circuit Judges.

L. HAND, Circuit Judge.

These appeals are from two orders in bankruptcy, extending the possession by a trustee in reorganization of two parcels of land in the City of New York until July 1, 1946. Both appeals present the same facts and raise the same question. Two leases in which the debtor was lessee, had a substantial time to run on August 26, 1943, when it filed its petition, and when Finn was appointed its trustee and took possession. On June 23, 1944, each lessor served a notice upon him, declaring the term forfeited and the lease at an end, by virtue of a clause giving the lessor the privilege of cancelling and retaking possession, if the lessee should file a petition in bankruptcy, or if a trustee in bankruptcy were appointed. Finn resisted eviction, but on September 27, 1944, the bankruptcy judge held that the leases had ended as of August 26, 1943, and directed Finn to surrender possession, although he stayed the surrender pending appeals to this court. We affirmed the orders on January 18, 1945, 146 F.2d 592; 2 Cir., 146 F.2d 594, and on February 1, 1945, orders on our mandates were entered in the District Court, directing Finn to surrender. He petitioned for certiorari in the case against Meighan, and Mr. Justice Jackson stayed execution of our order in that case on February 9, 1945; certiorari was granted 324 U.S. 834, 65 S. Ct. 714, and our decision was affirmed on May 21, 1945, 325 U.S. 300, 65 S.Ct. 1147. Meanwhile the district judge had stayed surrender of the other parcel until the outcome of the certiorari. When that had been decided, Finn moved in both cases further to postpone surrender until July 1, 1946, because on March 28, 1945, the New York Legislature had passed the "Emergency Rent Control Law" Chapter 314, Laws of 1945, McK.Unconsol.Laws, § 8551 et seq., effective retroactively as of January 24, 1945, which authorized any lessee to remain in possession during an "emergency" period ending July 1, 1946, provided he continued to pay the "emergency rent" as therein defined. Both lessors rely on the same points on these appeals: (1) That the "Rent Control Law" was not intended to apply to property in the custody of the Bankruptcy Court; (2) that, even if it were, the leases were within subdivision (e) of § 8 of the "Law"; (3) that the act is a procedural statute only, and does not affect bankruptcy proceedings; (4) that if it did, it would be unconstitutional, because it would interfere with the jurisdiction of the bankruptcy court; and (5) that, in any event, it is unconstitutional under the Fourteenth Amendment.

Finn was a "tenant" within both the words and purpose of the "Rent Control Law." Section 2(e) defines that word to include "a lessee * * * or other person entitled to the possession * * * of any business space." We may assume that, as the leases came to an end as of August 26, 1943, Finn was not a "lessee" on January 24, 1945; nevertheless, any privilege of the debtor in the premises passed to him, and if the debtor would have been "entitled to the possession" of the parcels on January 24, 1945, he was so entitled. He was in fact in possession and, although we had, it is true, already decided the appeals, our mandates had not gone down, and the judge's stay was still in effect, under which Finn was "entitled" to the possession which in fact he had. The situation was substantially on all fours with that in Cohen v. Starke, 269 App.Div. 256, 55 N.Y.S.2d 337 where a lessor cancelled two leases on January 8, 1945, the warrants of eviction on which issued on January 16, 1945. Execution of the warrants was, however, stayed by agreement until January 31, 1945, which was seven days after the act took effect. The lessor argued that, since under § 1434 of the New York Civil Practice Act the issuance of the warrants had put an end to the leases,

the "Rent Control Law" did not apply. But the court said "no"; that the lessees "were tenants within the meaning of the Act" 269 App.Div. page 260, 55 N.Y.S.2d page 340—an inescapable conclusion, as it seems to us. Nor is there the least reason to believe that the act did not mean to apply to property within the custody of the Bankruptcy Court. Were that true, we should have to impute to the legislature a purpose to discriminate against lessees which chanced to be in process of liquidation or reorganization: a discrimination, capricious and totally out of harmony with the general object of the act, as we held in a closely similar situation. Cullen v. Bowles, 2 Cir., 148 F.2d 621. The receiver of property being administered in a federal court is subject to the general municipal regulation of the state, and must conform to its law in conducting his business, § 124, 28 U.S.C.A. Gillis v. State of California, 293 U.S. 62, 55 S.Ct. 4, 79 L.Ed. 199. Trustees under Chapter X, 11 U.S. C.A. § 501 et seq. are as much so subject as ordinary receivers in equity, Palmer v. Webster and Atlas Bank, 312 U.S. 156, 166, 61 S.Ct. 542, 85 L.Ed. 642; and Finn, who was obliged to conform to the "Rent Control Law" might also invoke its benefits. Finally, it is immaterial that that "Law" contemplated possible recourse to the state court to fix a "reasonable rent,"—§ 4, McK. Unconsol.Laws, N.Y. § 8554—if the "emergency rent" was not satisfactory. It is a constant, and often a most desirable, practice of bankruptcy judges to submit issues to state courts for decision. Foust v. Munson S. S. Lines, 299 U.S. 77, 57 S.Ct. 90, 81 L.Ed. 49; State of Texas v. Donoghue, 302 U.S. 284, 58 S. Ct. 192, 82 L.Ed. 264; Thompson v. Magnolia Petroleum Co., 309 U.S. 478, 483, 60 S.Ct. 628, 84 L.Ed. 876; In Re Schulte United, Inc., 2 Cir., 49 F.2d 264.

■ The next objection is that Finn was within subdivision (b) of § 8, and for that reason not privileged to hold over. Subdivision (b) is in two parts, of which only the first is pertinent here; it excepts from the privilege "tenants" who have "violated a substantial obligation * * * other than an obligation to pay rent." The debtor did not promise not to file a petition in bankruptcy; it did not promise that no trustee in bankruptcy should be appointed for it; the terms for years created by the leases came to an end because of the conditions subsequent which had been imposed upon them. We do not understand that the lessors dispute this; but they argue that there was an implied promise in both leases—as in all leases—that the lessee should not become bankrupt, and that the breach of that promise was the breach of an obligation other than one to pay rent. Central Trust Co. v. Chicago Auditorium Association, 240 U.S. 581, 36 S.Ct. 412, 60 L.Ed. 811. It is true that the doctrine of anticipatory breach rests upon an implied promise, supplementary to the promisor's express promise; but, although that indubitably does add to the stipulated performance, what it adds is only the continued assurance—until the time for performance arrives—that, when that time comes, the promisor will perform. The lessor's argument must therefore be that, while § 8 grants the privilege of holding over to a "tenant" who although he pays the "emergency rent," fails to pay the rent reserved when that rent becomes due, it does not grant that privilege to one who does anything before that time which seriously imperils his ability to pay the rent reserved. A legislature, bent upon depriving lessors of the power to exploit a shortage of building space, would certainly not wish to exclude from the protected class tenants in financial difficulties. An implied promise to remain presumptively able to pay rent is so close to a promise to pay it, that the pervading purpose of the act as a whole is an easy bridge over any verbal cleavage between the two.

■ The third objection is that the act merely changed procedure in the state courts. On the contrary, we can imagine nothing more vitally intervening in the relation of lessor to lessee; in effect, the act impounds the lessor's land for the period of the "emergency," and gives it to the lessee at an advance arbitrarily fixed at fifteen per cent, or at one found by a court to be "reasonable." It suspends all freedom of contract between the two; it favors those who are already in possession, by excluding others whose need may be greater, and whose deserts may be higher. It cannot be seriously argued that, because this object is achieved by curtailing the lessor's remedies, the statute itself is merely "procedural." The fourth objection necessarily falls with the third.

■ The fifth and last objection is that the act is unconstitutional under the Four-

teenth Amendment as a taking of property without due process. As we have just said, it does indeed take the lessor's property, though only for a limited period and not without compensation; but it does not deny him "due process," unless it would do so to compel those, who held the food supply in a time of shortage, to distribute it at less than the highest prices they could exact. It has now for many years been accepted law that the ownership of property, certainly when like land it is limited, does not entitle the owner to press to the extreme the advantage which its scarcity permits in times of "emergency." Block v. Hirsh, 256 U.S. 135, 41 S.Ct. 458, 16 A. L.R. 165, 65 L.Ed. 865; Marcus Brown Co. v. Feldman, 256 U.S. 170, 41 S.Ct. 465, 65 L.Ed. 877; Levy Leasing Co. v. Siegel, 258 U.S. 242, 42 S.Ct. 289, 66 L.Ed. 595. The courts of New York are unable to distinguish the present "emergency" from that of twenty-five years ago. Twentieth Century Associates v. Waldman, 294 N.Y. 571, 63 N.E.2d 177. So are we.

Orders affirmed.