**ERNST v. OBERFERST.**

No. 137, Docket 20837.

Circuit Court of Appeals, Second Circuit.

March 3, 1948.

George E. Netter, of New York City (Geist & Netter and Helen M. Wolfsohn, all of New York City, on the brief), for appellant.

Arthur H. Goldberg, of New York City (Port, Samet & Goldberg, of New York City, on the brief), for appellee.

Before AUGUSTUS N. HAND, CLARK, and WOODBURY, Circuit Judges.

CLARK, Circuit Judge.

The main question argued on this appeal appears to us to be one of fact, namely whether the appellee, Samuel Oberferst, was the lessee of the seventh floor of a loft building in Long Island City, New York, and hence the landlord of the bankrupt, Para Ti Corporation, or whether he was simply a lender of money and hence a mortgagee of the premises. The issue was presented by his petition to the bankruptcy court for an order directing the payment to him of the reasonable value of the trustee's occupancy and for a direction that the landlord apply for permission to adopt or reject the lease from him within a reasonable time. The referee heard the evidence and said in a memorandum, "The evidence seems to establish that the owner refused to accept the Debtor as a prospective tenant but did accept the petitioner Oberferst instead, and that pursuant thereto, the latter received a lease (Exhibit 4) from the owner." Accordingly the referee made findings and entered an order in favor of Oberferst as landlord requiring the payment by the trustee to him of $750 per month, plus disbursements for light and power, for use and occupation, and setting a time for assumption or rejection by the trustee of the executory contract of lease between the bankrupt and Oberferst. On petition for review the district court affirmed this order in open court, and the trustee appeals.

There was evidence before the referee to show that in May, 1946, the bankrupt sought to lease the seventh floor of the loft building in question from its owner, the International Selectar Corporation. There were preliminary negotiations which in fact led to the signing of a lease from the owner to Para Ti. The owner, however, insisted upon a three-year lease at a rent of $30,000 for the entire term, payable in advance; and when Para Ti was unable to make the payment, the owner refused to accept it as tenant. Oberferst then agreed to pay the $30,000, provided he became the tenant; and he was accepted as tenant by

the owner, and a new lease was executed between the owner and him. Para Ti entered into possession of the premises as his subtenant. About six months later, on January 6, 1947, Para Ti filed a petition for an arrangement and was eventually adjudicated bankrupt, and appellant was appointed its trustee in March. The referee's order was made on June 30, 1947, and the payment it ordered was for the period of occupancy after the filing of the petition. The trustee had offered evidence to show that Para Ti was intended to be the actual tenant of the original owner, and that Oberferst merely loaned money and had no greater rights than that of mortgagee, though taking a lease absolute in form as security. In view of the other evidence, however, the referee was not bound to accept this version, but could properly find, as he did, that Oberferst was the lessee of the original owner and the landlord of the bankrupt. The referee was obviously impressed with the testimony of Selectar's president, who carried on the negotiations for his company as owner and who testified to his ultimate refusal of Para Ti and acceptance of Oberferst as lessee. This finding, affirmed by the district court, therefore controls to require affirmance of the order in so far as it finds appellee entitled to payment for use and occupation of the premises by the trustee.

The two further defenses of the trustee concern the fixing of the amount of this payment and rest upon the provisions of the recent state statute for the "Stabilization of Commercial Rents," McK.Unconsol. Laws N.Y. § 8521 et seq., a part of New York's Emergency Rent Control legislation. Although these defenses were pressed before the referee and in the petition for review, they are not mentioned by either the referee or the court and we are not aided by their views on the only issues we find troublesome in the case. It would seem that both the referee and the district judge must have gone on the theory, pressed upon us by the appellee on appeal, that these laws do not apply to a determination of rental or return for use of property in the control of the bankruptcy court. But we have definitely held the contrary, first in Cullen v. Bowles, 2 Cir.,

148 F.2d 621, dealing with a federal statute, and more lately in Finn v. 415 Fifth Ave. Co., 2 Cir., 153 F.2d 501, certiorari denied Meighan v. Finn, 328 U.S. 839, 66 S.Ct. 1014, 90 L.Ed. 1614, under this state law. We have found no justification for an exception in favor of estates in bankruptcy from the over-all regulation of rentals under emergency conditions, and are surprised at the persistence of the exception with the lower tribunals. Nor can we accept the suggested distinction here that this case calls only for the fixing of the reasonable rental, rather than a more technical rent, to reach a result we have repudiated in substance in those earlier cases. The statute itself, § 2 (j), McK. Unconsol. Laws N.Y. § 8522 (j), defines rent as "The consideration, including any bonus, benefit, or gratuity, charged or received by the landlord, his agents, or other representatives for the use or occupancy of the whole or any part of any commercial space." The definite statutory purpose is also shown by § 3, McK.Unconsol. Laws N.Y. § 8523, making any rent in excess of the emergency rent presumptively "unjust, unreasonable and oppressive," and by § 7, McK.Unconsol. Laws N.Y. § 8527, declaring any rent in excess of the emergency rent or any rent fixed under § 4 to be "uncollectible." Surely it should not be possible to avoid the drastic restrictions imposed by this legislation by the mere device of failing to state a precise amount of rent. We are clear, therefore, that the amount of the payment to be required of this trustee must accord with the law's requirements.

Appellee, however, contends further that the result below was a substantial compliance with the rent legislation. He points out that the sum fixed, namely $9,000 a year or $750 a month, plus disbursements for light and power, was in accordance with the only direct evidence of value presented, that of his expert, and that it is substantially less than the $10,000 a year or $833.33⅓ a month required by his lease to the owner, or the $1,200 a month he himself originally claimed from the bankrupt as subtenant. But the expert expressly stated that he had not taken into consideration the emergency or ceiling rent

of the space; and in the absence of any findings, we have no way of knowing that it satisfied the statutory requirements. Indeed, there are some indications in the record to the contrary. Thus on June 5, 1947, appellee, as landlord, gave the trustee what purported to be notice as required by the statute to the effect that under a lease in effect on March 1, 1943, the rent for the sixth and seventh floors was $8,000 per annum, and hence under the Commercial Rent Law, "the 'emergency rent' for the said commercial space is $9,200.00 per annum, and $4,600.00 per annum for the seventh floor on the basis of said lease." And since appellee's expert had testified that the seventh floor was worth about 10 per cent less than the sixth, appellant urges that such rent must be further limited to "the rate of $4,140 per annum or $345 per month." That appellee may have paid his landlord in excess of the statutory maximum will not justify an overcharge by him.

In any event it is clear that the rental was not fixed in accordance with the statutory methods. Sec. 1, in declaring the public emergency, calls for the establishment of a maximum rent for commercial space "at a level of fifteen per centum above rents charged on March first, nineteen hundred forty-three, or at a level otherwise determined as provided herein." Sec. 2 defines the "emergency rent" as the rent payable "under any lease, agreement or tenancy of commercial space in force on March first, nineteen hundred forty-three, plus fifteen per centum of such rent; provided that if the commercial space was not used or occupied on such date for commercial purposes, the emergency rent shall be the reasonable rent therefor as of such date, plus fifteen per centum thereof, to be fixed by agreement, by arbitration, or by the supreme court upon the basis of the rent charged on such date for the most nearly comparable commercial space in the same building, or other rental area, or other satisfactory evidence." A further proviso, authorizing the allowance of an additional amount under certain circumstances in the case of leases entered into prior to June 1, 1939, is not in point here. Sec. 4, however, provides that "a rent, exceeding in amount the emergency rent, may within the limitations specified by this section, be fixed by arbitration or by the supreme court." Detailed provisions for the fixing of this amount at "a reasonable rent based on the fair rental value of the tenant's commercial space as of the date the application to the supreme court or submission to arbitration is made" follow and require the consideration of a series of factors in such determination, including the cost of maintenance and operation of the entire property, the amounts paid for taxes, the kind, quality, and quantity of services furnished, and so on. The detail goes to the point of stating the percentage of return on fair value which shall be presumed to be reasonable.

Appellee's argument is that, since the premises were leased as different units on March 1, 1943, the court must fix the rent under the alternative provision (first proviso) of § 2 (e), and that the conclusion reached below substantially complied with that requirement. In the absence of findings we have no showing of the actual situation on March 1, 1943, other than the statement in appellee's notice of June 5, 1947, that at that time the sixth and seventh floors were rented together. Whether or not this would require a court fixing of the emergency rent is not at all clear. The decision of the Appellate Term, First Department, in Cronson v. Fink, 184 Misc. 723, 54 N.Y.S.2d 789, tends to indicate that the fact that the 1943 leasing was of different units than those for which the emergency rent is now sought is sufficient to require court action. But the summary nature of the opinion and the absence of any statement of the facts leaves us in some doubt as to the real extent of the holding, particularly as it seems to be contrary to the explicit language of the statute. On the other hand, the court in Application of 114 No. 4th St. Corp., 185 Misc. 170, 56 N.Y.S.2d 440, 442, after careful consideration declined to accept this view in ruling in a like situation that the petitioner had not established a statutory right to bring a proceeding for fixing the emergency rent, saying: "It definitely appears that the premises were not unused and un-

occupied as of March 1, 1943; as a matter of fact, they were at that time under lease and were occupied, although not actually in the same units as at present. It seems clear that the space now occupied by respondents must have had a rental value as of March 1, 1943, which can be computed by the petitioner landlord. This need not of necessity be upon a prorated basis; the landlord should know how much of the over-all rent paid by said Beacon was chargeable to the third and fourth floors. If, however, in the judgment of the landlord such rent does not correctly represent the fair and reasonable rental value, the landlord has an appropriate remedy under section 4 of the statute."

This seems an appropriate interpretation of the statute and may serve as a guide to the court on the remand of the case which we think is required. For it is quite clear that the amount found below as the reasonable value of the rental on the basis of the appraisal by appellee's expert had reference not to the situation as of March 1, 1943, but to that of the time of the hearing. Nor could the proceeding be considered as on a landlord's application for the fixing of a greater rent under § 4, because no attempt was made to ascertain the facts there required to be considered or to make the findings necessarily requisite to action under that section.

On remand all these issues can be appropriately explored, together with the final point raised by appellant, namely as to whether appellee may have debarred himself from recovery of a part of his claim by virtue of a willful demand of rent in excess of the emergency rent, as prohibited by § 4. As it stands, the record is not clear as to whether such demands as he made were before or after the filing of the petition on January 6, 1947, and the issue of willfullness was not touched upon. Cf. Manufacturers Trust Co. v. Arvin Chemists, 187 Misc. 38, 60 N.Y.S.2d 504; Application of 30 Wythe Ave. Realty Corp., 184 Misc. 1055, 56 N.Y.S.2d 460.

The parties have made no point as to the power of the bankruptcy court to act in the premises. There can be no question but that the bankruptcy court must act ultimately to set the allowance to be made for what is one of the expenses of the bankruptcy administration, one which the court might conceivably (i. e., on proof of a lesser reasonable value) set at a less amount than the statutory maximum. New York City Housing Authority v. Philmo Garage Corp., 187 Misc. 413, 63 N.Y.S.2d 236. And if it is possible to find the emergency rent from the rent directly payable for the premises on March 1, 1943, there will then be no occasion for further proceedings. Otherwise the question may arise as to whether the bankruptcy court may make findngs as required by the state statute or, absent the arbitration or agreement referred to in the statute, must direct the parties to proceed in the state supreme court for the fixing of the statutory rent. In Finn v. 415 Fifth Ave. Co., supra, 2 Cir., 153 F.2d 501, 503, we answered the argument that the statute was not applicable in bankruptcy proceedings, because it contemplated possible recourse to the state court, by saying that that was immaterial, for "it is a constant, and often a most desirable, practice of bankruptcy judges to submit issues to state courts for decision." Beyond this recognition of the possibility of state decision, we did not decide the point. Where the problem is one of fixing rent over a presumably lengthy period, as in proceedings to reorganize a corporation, such a course may prove convenient and desirable. But where there is involved only the fixing of a single definite amount to be paid for the trustee's use as a step in the winding up of a bankrupt estate, such a course might well prove unduly time consuming and expensive. We find nothing in the state statute to suggest so exclusive a remedy as to prevent altogether any federal adjudication; on the contrary, that statute provides for the other methods of agreement and arbitration and further shows, as the state decisions hold, that the proceeding is a judicial one to ascertain facts according to judicial standards and subject to the usual appellate review. Cf. Twentieth Century Associates v. Waldman, 294 N.Y. 571, 63 N.E.2d 177, 162 A.L.R. 197, appeal dismissed 326 U.S. 696, 66 S.Ct. 492, 90 L.Ed. 410; Zellner v. Brooklyn Trust Co.,

524

270 App.Div. 941, 62 N.Y.S.2d 40. Hence we think that resort to the state court is to be dictated by considerations of wise comity, as in Thompson v. Magnolia Petroleum Co., 309 U.S. 478, 60 S.Ct. 628, 84 L.Ed. 876, and Mangus v. Miller, 317 U.S. 178, 186, 63 S.Ct. 182, 87 L.Ed. 169, rather than by any absolute requirement of jurisdiction, and that the bankruptcy court may itself take full jurisdiction if in the exercise of a wise discretion it finds such a course to be desirable. See Gardner v. New Jersey, 329 U.S. 565, 579-584, 67 S.Ct. 467, and the discussion in the two opinions in Re Central R. Co. of New Jersey, 3 Cir., 163 F.2d 44, certiorari denied Gardner v. State of New Jersey, 332 U.S. 810, 68 S.Ct. 112, particularly the authorities cited by Goodrich, J., 163 F.2d at pages 54, 55, n. 1.

Order reversed in part and case remanded for further proceedings consistent with this opinion.