In re FRIARTON ESTATES
CORP., Debtor.

FRIARTON ESTATES CORP., Plaintiff,

v.

The CITY OF NEW YORK, Defendant.

Bankruptcy No. 82 B 11183 (PA).
Adv. No. 83–5890A.

United States Bankruptcy Court,
S.D. New York.

Sept. 29, 1986.
As Amended Oct. 22, 1986.

Sunshine, Slott & Sunshine, P.C. Former Attys. for debtor, by Robert W. Slott, New York City, former attys., for debtors.

Frederick A.O. Schwartz, Jr., Corp. Counsel by Glenn Newman, Steven E. Resnick, Harry Michelson, Gen. Counsel, Rent Control Div. by Alan W. Ginsberg, New York City, for defendant.

MFY Legal Services, Inc. by Norman Siegal and Michael D. Kaufman, New York City, for Tenant Gladys Brea.

## DECISION AND ORDER ON MOTION TO REJECT LEASES AND MOTION TO DISMISS CERTAIN COUNTS OF COMPLAINT .

PRUDENCE B. ABRAM, Bankruptcy Judge:

Friarton Estates Corporation ("Friarton") and the City of New York ("City") have been involved continuously in litigation since Friarton's acquisition in June 1977 of title to certain parcels of real property in Manhattan.[1] At that time, the properties were subject to substantial, overdue obligations to the City for sewer rents, water charges and real estate taxes. Shortly after Friarton acquired title, the City moved to foreclose. The City successfully obtained a judgment of foreclosure in *In Rem Action No. 29, order affirmed,* 79 A.D.2d 899, 435 N.Y.S.2d 872 (1st Dept. 1980), *appeal dismissed,* 53 N.Y.2d 795, 439 N.Y.S.2d 1031, 422 N.E.2d 597 (1981), *cert. den'd,* 454 U.S. 837, 102 S.Ct. 141, 70 L.Ed.2d 117 (1981). Thereafter Friarton commenced a federal court action and persuaded the district court to enter an injunction against the City taking title to the property until Friarton had a hearing on the validity of the tax assessment. *Friarton Estates Corp. v. City of New York,* 525 F.Supp. 1250 (S.D.N.Y.1981). The Second Circuit found that the issues had been previously litigated in state court and dismissed the complaint. *Friarton Estates Corp. v. City of New York,* 681 F.2d 150 (2d Cir.1982). On June 25, 1982, Friarton resorted to the federal bankruptcy laws for relief by filing a petition for reorganization under Chapter 11.

Throughout all of the litigations, Friarton's position has been that the imposition of rent control, coupled with the assessment of real estate taxes on a basis which does not take account of the reduction in income mandated by rent control, places these properties in a condition where there is no possibility that their operating expenses can be paid from the rental income.

In this Chapter 11 case, Friarton now seeks "to reject performance of the unexpired leases imposed by operation of law covering the several premises being occupied by the respondent [rent-controlled] tenants." The rejection motion, filed on July 28, 1983, is limited to tenants paying under $200 a month. That category includes 69 rent controlled tenants. For the purposes of this opinion, the court will assume that the rents being paid by these tenants are well below the rents which Friarton could collect if the apartments were not subject to rent control. Furthermore, the court accepts *arguendo* Friarton's assertion that the expenses of operation relative to these apartments exceed the rental income. This has not been a subject of testimony although the court has been supplied with affidavits by Friarton to that effect. It would serve no purpose on this motion to become involved in the morass of information necessary to ascertain whether the legally mandated rents could be raised to a level at which the income would equal or exceed expenses, a proposition asserted by the Rent Control Division in opposition to the motion.

The rejection motion is predicated on the following:

"This application is being made in a hope that many of the apartments will be vacated and the debtor will be able to rerent the apartments at a fair and reasonable rental."

1. Friarton owns eight separate parcels of real property, all located on or around Ninth Avenue, in the Borough of Manhattan, City of New York, and more particularly described by Section, Block and Lot No. as follows:

| Section | Block | Lot |
| --- | --- | --- |
| 3 | 735 | 30 |
| 3 | 1042 | 2 |
| 3 | 1042 | 3 |
| 3 | 1042 | 4 |
| 3 | 1042 | 5 |
| 3 | 1042 | 6 |
| 3 | 1042 | 7 |
| 3 | 1042 | 64 |

Application at 6. During the course of oral argument, counsel for Friarton conceded that the motion to reject assumed that Friarton would be able to collect increased rentals from the tenants and/or cause them to remove from the premises and relieve the landlord from its obligation to provide services.

This motion by Friarton is conceptionally intertwined with another separate and distinct matter. On August 18, 1983, Friarton commenced an adversary proceeding against the City seeking a permanent mandatory injunction compelling the City to abide by a certain stipulation of settlement and a declaratory judgment with respect to certain constitutional issues. The permanent mandatory injunction request was contained in counts 1 and 2 of the complaint and those counts have been deemed withdrawn pursuant to a stipulation dictated into the record on August 22, 1983. The third count of the complaint alleges that the requirements of the laws of the City of New York that mandates Friarton to provide essential services but limits the rent recoverable to that provided in a rent control law are unconstitutional as applied to Friarton, a Chapter 11 debtor. The fourth count requests that this court have a hearing to fix the rents for the rent controlled apartments at the minimum necessary to pay operating expenses. With respect to count 3 and 4 the City has filed a motion to dismiss, alleging that the bankruptcy court lacks jurisdiction over the subject matter and that the counts are barred by the doctrines of *res judicata*, collateral estoppel and accord and satisfaction.

## DISCUSSION

As an exercise of its police power, the City of New York promulgated certain laws regarding the regulation and control of residential rents and evictions necessary to protect the public health, safety and general welfare. NY [Rent Control]

§ 8601 *et seq.* (McKinney 1974). The provision of the means for reorganization under the federal bankruptcy laws is considered to be in the national interest. See H.R. Rep. No. 95–595, p. 220 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787. Under Bankruptcy Code § 365, a debtor-lessor can reject executory contracts and unexpired leases.[2] Such a rejection is necessary to "release the debtor's estate from burdensome obligations that can impede a successful reorganization." *NLRB v. Bildisco & Bildisco,* 465 U.S. 513, 528, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984) (*"Bildisco"*).

At the outset, this court should state that it is not satisfied that the claims raised by Friarton in the third and fourth counts of the complaint are barred from adjudication because of any notion of issue preclusion. Rent control as impacted by the Bankruptcy Code has never been addressed relative to Friarton by any court or by any stipulation of the parties. For the reasons that follow, this court finds that Friarton cannot avoid the New York City rent control or housing laws through use of Code § 365 and that the rejection motion must be denied. This court's reasons for denying the rejection motion also dispose of the third and fourth counts of the complaint adversely to Friarton.

The resolution of competing state and federal law must begin with 28 U.S.C. § 959(b). Section 959(b) provides that:

"[e]xcept as provided in section 1166 of title 11, a trustee, receiver · or manager appointed in any cause pending in any court of the United States, including a debtor-in-possession, shall manage and operate the property in his possession as such trustee, receiver or manager according to the requirements of the valid laws of the state in which such property is situated, in the same manner that the owner or possessor thereof would be bound to do if in possession thereof."

---

**2.** Code § 365, entitled "Executory Contracts and Unexpired Leases," states:

"(a) Except as provided in sections 765 and 766 of this title and in subsections (b), (c),

and (d) of this section, the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor."

The constitutionality of a predecessor to § 959(b) was upheld in *Gillis v. California,* 293 U.S. 62, 55 S.Ct. 4, 79 L.Ed. 199 (1934). The United States Supreme Court found that a receiver appointed in the reorganization of an oil company must comply with local statutes, requiring a bond and license, to continue to operate the business. Another Supreme Court decision stated that the "obvious" Congressional intent of the statute was "to negative the idea that a federal receiver or trustee could ignore the rules of law of the state of operation affecting the conduct of the business committed to his charge." *Palmer v. Webster and Atlas National Bank of Boston,* 312 U.S. 156, 166, 61 S.Ct. 542, 546, 85 L.Ed. 642 (1941).

Such rules of law affecting the trustee's or debtor in possession's conduct include the New York City Emergency Rent Control laws. See *Cullen v. Bowles,* 148 F.2d 621 (2d Cir.1945). In *Cullen,* the trustee in bankruptcy of an apartment building sought a declaration that he was not subject to the Emergency Price Control Act of 1942. The district court held that "The Emergency Price Control Act did not apply because there had been no repeal of any part of the Bankruptcy Act and that to imply any repeal would interfere with the control of the bankruptcy courts over corporate reorganizations and might at times make them not feasible." *Id.* at 622. The Second Circuit reversed, holding that the District Court was without jurisdiction to determine the issue and that the only judicial remedy lay in the Emergency Court of Appeals. The court stated:

> "To hold that a trustee in reorganization may disregard a rent ceiling or a price ceiling because such a course will benefit the creditors he represents and advance a plan of reorganization would involve consequences most detrimental to the purposes and uniform administration of the Act."

*Id.* at 624.

The *Cullen* decision was reaffirmed by another Second Circuit decision in which the Second Circuit squarely addressed the issues of, *inter alia,* whether the rent control law applied to property in the custody of the bankruptcy court, and, if it did, whether it was an unconstitutional infringement on the jurisdiction of the bankruptcy court. *Finn v. 415 Fifth Ave. Co.,* 153 F.2d 501 (2d Cir.), *cert. denied sub nom, Meighan v. Finn,* 328 U.S. 839, 66 S.Ct. 1014, 90 L.Ed. 1614 (1946). *See In the Matter of Borne Chemical Co.,* 54 B.R. 126, 135 (Bankr.D.N.J.1984) (In dicta, the court explained that § 959(b) requires that "a trustee operating an apartment building must comply with state rent control guidelines."). Judge Learned Hand, writing for the court, held that a petition for reorganization does not preclude application of the Rent Control Law. Judge Hand stated:

> "Nor is there the least reason to believe that the act did not mean to apply to property within the custody of the Bankruptcy Court. Were that true, we should have to impute to the legislature a purpose to discriminate against lessees which chanced to be in process of liquidation or reorganization: a discrimination, capricious and totally out of harmony with the general object of the act, as we held in a closely similar situation [i.e., *Cullen v. Bowles* ]."

153 F.2d at 503.

The *Cullen* and *Finn* precedents were reaffirmed in *Ernst v. Oberferst,* 166 F.2d 519 (2d Cir.1948), in which the court held that a trustee must obey state statutes on the stabilization of commercial rents in the context of a determination of rental or return for use of property in the control of the bankruptcy court. The court stated:

> "We have found no justification for an exception in favor of estates in bankruptcy from the over-all regulation of rentals under emergency conditions, and are surprised at the persistence of the exception with the lower tribunals. Nor can we accept the suggested distinction here that this case calls only for the fixing of the reasonable rental, rather than a more technical rent, to reach a result we have

repudiated in substance in those earlier cases."

166 F.2d at 521.

While 28 U.S.C. § 959 serves to obviate the effect of the Supremacy Clause of the United States Constitution, it obligates, or in Friarton's view, burdens Friarton, as a debtor in possession to work under the same requirements of law with respect to the operation of its real property that it would be if it were not a debtor in possession. As this court stated in *Matter of Kennise Diversified Corp.*, 34 B.R. 237, 245 (Bankr.S.D.N.Y.1983), "[t]he provisions of the Bankruptcy Code do not and are not intended to provide an automatic mechanism for relieving property owners of the unpleasant effects of valid local laws embodying police and regulatory provisions."

Challenges that the rent control laws are unconstitutional have repeatedly been rebuked. *See e.g., Bowles v. Willingham,* 321 U.S. 503, 64 S.Ct. 641, 88 L.Ed. 892 (1944); *Woods v. Miller Co.,* 333 U.S. 138, 68 S.Ct. 421, 92 L.Ed. 596 (1948); *Benson Realty Corp. v. Beame,* 50 N.Y.2d 994, 409 N.E.2d 948, 431 N.Y.S.2d 475 (1980); *see also Fisher v. City of Berkeley,* — U.S. —, 106 S.Ct. 1045, 89 L.Ed.2d 206 (1986) (where the Supreme Court took yet another opportunity to uphold the constitutionality of rent control by rejecting an attack on antitrust grounds).

 Friarton's argument that noncompliance with the rent control laws is necessary to effect a successful reorganization is without merit.[3] The goals of the federal bankruptcy laws, the rehabilitation of the debtor and the maximization of the estate for the benefit of creditors, "do not authorize transgression of state laws setting requirements for the operation of the business even if the continued operation of the business would be thwarted by applying state law." *In the Matter of Quanta Resources Corp.,* 739 F.2d 912, 919 (3d Cir.1984) (*"Quanta"*), *aff'd sub nom, Midlantic National Bank v. New Jersey Department of Environment Protection,* — U.S. —, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986) (*"Midlantic"*).[4]

Another section to be considered in resolving this apparent conflict between state and federal law is Code § 362(b)(4).[5] That section exempts from the effects of the automatic stay any action by a governmental unit to enforce such governmental unit's police or regulatory power. *See e.g., Gillis v. California, supra,* 293 U.S. at 62, 55 S.Ct. at 4 ("Whatever may be the inherent power of a court incident to a grant of jurisdiciton * * * there seems no ground whatever for saying that Congress cannot withhold or withdraw from events of equity the right to empower receivers in conservation proceedings to disregard local stat-

---

**3.** This court rejects the holding in *In re Stable Mews Associates, Inc.,* 41 B.R. 594 (Bankr.S.D.N.Y.1984), to the extent this decision differs from it. It is worth noting that, unlike the situation in *Stable Mews,* this case does not present a situation in which a trustee seeks to enhance the value of the bankrupt estate for the benefit of creditors through rejection. On the contrary, here it is a debtor-in-possession which seeks rejection, a rejection that is opposed by the City of New York, the major creditor. Moreover, the prime beneficiary of any enhancement in the value of the properties resulting from rejection would appear to be the Debtor, Friarton, and its shareholders.

**4.** In *Midlantic,* the Supreme Court held that a bankruptcy trustee could not abandon property in contravention of state statute or regulation reasonably designed to protect public health and safety. Justice Powell stated:

"Congress has repeatedly expressed its legislative determination that the trustee is not to

have *carte blanche* to ignore nonbankruptcy law. Where the Bankruptcy Code has conferred special powers upon the trustee and where there was no common-law limitation on that power, Congress has expressly provided that the efforts of the trustee to marshal and distribute the assets of the estate must yield to governmental interest in public health and safety."

106 S.Ct. at 760.

**5.** Section 362(b)(4) provides:

"(b) The filing of a petition under section 301, 302, or 303 of this title * * * does not operate as a stay—

"(4) under subsection 9(a)(1) of this section, of the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power;"

utes"); *Matter of The Briarcliff,* 15 B.R. 864, 868 (D.N.J.1981) ("it is clearly outside the power of the court to allow an activity continued after filing in bankruptcy to ignore state or local law which all others in the same activity must comply with.").

In *The Briarcliff,* the District Court of New Jersey affirmed a bankruptcy court decision denying a debtor-lessor's motion to stay certain Rent Leveling Board proceedings stating that "the Bankruptcy Court is only empowered to preserve the assets of a bankrupt estate and cannot authorize noncompliance with local law." *In the Matter of The Briarcliff,* 15 B.R. 864, 867 (citing *In re Dolly Madison Industries, Inc.,* 504 F.2d 499, 504 (3d Cir.1974). The tenants in *Briarcliff* alleged in the pleadings that "the change requiring them to pay individual utility charges amounts to a rental increase in excess of the amount permitted" by a Rent Leveling Ordinance. 15 B.R. at 865.

Justice Powell, in *Midlantic,* pointed out that though Code § 362(a) is one of the fundamental debtor protections provided by the Bankruptcy Code, there are specific exceptions. He concluded by saying that "[i]t is clear from the legislative history that one of the purposes of this exception [Code § 362(b)(5)] is to protect public health and safety." *Midlantic supra,* 106 S.Ct. at 761. The explicit expression of Congressional intent as evidenced by 28 U.S.C. § 959(b) and Code § 362(b)(5), to safeguard the integrity of state and local regulatory laws, must be followed.

An additional factor to be considered is the common view on the nature of property interests in bankruptcy. The Supreme Court in *Butner v. United States,* 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979) summarized the view:

"Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding. Uniform treatment of property interests by both state and

federal courts within a State serves to reduce uncertainty, to discourage forum shopping, and to prevent a party from receiving 'a windfall merely by reason of the happenstance of bankruptcy.' *Lewis v. Manufacturers National Bank,* 364 U.S. 603, 609 [81 S.Ct. 347, 350, 5 L.Ed.2d 323] (1961). The justifications for application of state law are not limited to ownership interests; they apply with equal force to security interests, including the interest of a mortgagee in rents earned by mortgaged property." 440 U.S. at 55, 99 S.Ct. at 918. *See also, Johnson v. First National Bank of Montevideo,* 719 F.2d 270, 274 (8th Cir.1983), *cert. denied,* 465 U.S. 1012, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984).

The Seventh Circuit has recently upheld the applicability of state rent control law to property subject to a railroad reorganization proceeding. The court in *Matter of Chicago, Rock Island R. Co.,* 772 F.2d 299 (7th Cir.1985), *cert. denied sub nom, Kent v. Sanborn Cooperative Grain Co.,* —— U.S. ——, 106 S.Ct. 1265, 89 L.Ed.2d 574 (1986) ruled that Iowa's Rent Control Laws applied to property sold by a trustee even though it might frustrate federal policy designed to maximize the selling price of a bankrupt railroad's assets. The decision is particularly persuasive to this court's holding because even though Congress explicitly exempted railroad reorganizations from the application of 28 U.S.C. § 959(b), the Seventh Circuit still found state rent control laws applicable to property in a bankruptcy proceeding.

■ Likewise, Friarton must abide by the requirements of local law that require essential services to be provided. Article 7A of the New York Real Property and Proceedings Law provides that tenants of a multiple dwelling may commence a special proceeding for a judgment " * * * directing the deposit of rents into court and their use for the purpose of remedying conditions dangerous to life, health and safety * * * " N.Y. RPAPL § 769(1). The action may be commenced by either one-third or more of the tenants or by the commissioner

of the department charged with enforcement of the housing maintenance code. The court may appoint what is known as a 7A administrator whose responsibility is to collect rents and to use such rents to remedy the condition or conditions alleged in the special proceeding. *See* N.Y.RPAPL §§ 776–778.

This court has previously had occasion to consider the interplay of Article 7A and the Bankruptcy Code. See *Matter of Kennise Diversified Corp., supra.* In *Kennise,* this court was faced with the question of whether "the debtor in possession was entitled to a turnover of its property in the possession of a [7A] administrator appointed to correct serious housing code violations?" *Id.* at 242. The court first determined that an Article 7A proceeding falls within the exception to the automatic stay, Code § 362(b)(4), and "an article 7A judgment is not a money judgment since it seeks to enforce the landlord's continuing obligation to comply with the housing laws with respect to provision of essential services. Therefore its enforcement is permitted under Bankruptcy Code § 362(b)(5)." *Id.* at 243.

This court also held that the provisions of 28 U.S.C. § 959 prevented this court from enjoining the enforcement of the 7A judgment. The court stated:

"Bankruptcy Code § 362(b)(4) and 28 U.S.C. § 959 form a smooth continuum and make it apparent that Kennise as debtor in possession must operate its building according to the dictates of non-bankruptcy law that would apply if there were no Chapter 11 case. This court sees no reason to substitute the bankruptcy court itself for the Civil Court as the enforcement forum, which has special expertise in these matters * * * *".

*Id.*

The decision in *Bildisco* is analogous. In that decision, the United States Supreme Court was confronted with harmonizing the Bankruptcy Code with another federal statute, the National Labor Relations Act. It did so by looking to the policy of the Bankruptcy Code and the expression of Congress in the two statutes. The Supreme Court in *Bildisco* found that Congress had not expressly resolved the conflict.[6] In the Friarton case, the Bankruptcy Code is being construed with state law. This court finds an express resolution by Congress of the conflict in 28 U.S.C. § 959 and in Code § 362. Congress has stated which laws should take precedence and in what manner. Where Congress has so clearly expressed its will, this court is not at liberty to act otherwise.

Moreover, the ability of a debtor-lessor pursuant to Code § 365 to oust rent controlled tenants by rejection is suspect. Code § 365 permits the rejection of "any executory contract or unexpired lease of the debtor." No definition of either executory contract or unexpired lease is contained in the Bankruptcy Code. The most widely cited definition of executory contract is set forth in Countrymen, *Executory Contracts in Bankruptcy: Part I,* 57 Minn.L.Rev. 439, 460 (1973):

"[A] contract under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing performance of the other."

*See also* H.R.Rep. No. 95–959, 95th Cong., 1st Sess. 347 (1977), *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 6303. The debtor seeks to reject as executory contracts its "leases" with rent controlled tenants. Under New York law, the occupancy of a statutory tenant is "not under any agreement, express or implied, but by virtue of the compulsion exerted on the landlord by the local emergency rent laws which allowed him to remain in possession." *Whitmarsh v. Farnell,* 298 N.Y. 336, 343, 83 N.E.2d 543 (1949). See also *In the Matter of Brown v. Denner,* 30 Misc.2d

6. However, the Supreme Court, stated in dicta that "* * * it is important to note that the debtor-in-possession is not relieved of all obligations under the NLRA simply by filing a petition for bankruptcy." 465 U.S. at 534, 104 S.Ct. at 1200.

229, 235, 218 N.Y.S.2d 834 (N.Y.City 1961) (court rejected landlord's attempt to have the statutory tenant pay for the installation of a central heating and hot water system, stating that "seeking to recover this expenditure as 'additional rent' from the tenant by virtue of the clause requiring compliance with municipal orders, was not projected into the statutory tenancy."). In a relatively recent case the Supreme Court of New York County was required to consider the question of whether rent controlled tenants hold leases, as that term is traditionally used, and concluded that "[Rent controlled tenants] are statutory tenants protected by the rent control laws. They do not hold leases * * *" *W.T. Associates v. Huston,* 123 Misc.2d 24, 472 N.Y. S.2d 562, 564 (S.Ct.N.Y.Co.1984). Although the purposes of state law and bankruptcy law cannot be assumed to be the same, this court finds no reason to deviate from state law in considering the nature of the rights of rent controlled tenants. The questions which can be raised with respect to whether rent controlled tenants are parties to any type of agreement, whether an executory contract or an unexpired lease, susceptible of rejection under Code § 365 are highly metaphysical because it must be presumed that the landlord-tenant relationship originally commenced on the basis of a contract between the parties.

As quoted from the Debtor's application above, the Debtor's principal purpose in seeking rejection is to succeed in removing the rent controlled tenants and being able to relet the apartments at higher rentals. Code § 365(h)(1) provides that where the debtor is the landlord, and rejection is permitted with respect to an unexpired lease of real property

> " * * * the lessee under such lease may treat the lease as terminated by such rejection, or, in the alternative, may remain in possession for the balance of the term of such lease and any renewal or extension of such term that is enforceable by such lessee under applicable non-bankruptcy law."

If the rent controlled tenants are deemed to be parties to a rejectable agreement, the Debtor's goal cannot be accomplished. These tenants will be entitled to remain in possession and, by virtue of the provisions of Code § 365(h)(2), may indeed remain in possession and not be obligated to pay any use and occupancy whatsoever, thus eliminating even the modest payments now being received.[7] *Compare In re Upland Euclid, Ltd. v. Grace Restaurant Co.,* 13 C.B.C. 898, 56 B.R. 250 (Bankr. 9th Cir. 1985), in which a divided Bankruptcy Appeals Panel for the Ninth Circuit held Code § 365(h)(2) allowed a debtor to eliminate services but not to increase the rent to a non-debtor lessee's estate.[8]

The circumstance of ownership of buildings subject to rent control, which this debtor voluntarily assumed, may not be mitigated by the bankruptcy laws. The court accepts the notion of judicial restraint expressed in *In the Matter of Penn Cen-*

---

**7.** Code § 365(b)(2) provides that:

"If such lessee remains in possession as provided in paragraph (1) of this subsection, such lessee may offset against the rent reserved under such lease of the term after the date of the rejection of such lease and any such renewal or extension thereof, any damages occurring after such date caused by the nonperformance of any obligation of the debtor under such lease after such date, but such lessee does not have any rights against the estate on account of any damages arising after such date from such rejection, other than such offset."

Moreover, the court notes that since these tenants are interspersed in the building with tenants whose "leases" are not the subject of this motion to reject, it is highly uncertain whether the landlord is even in a position to terminate essential services to these tenants so as to accomplish any savings.

**8.** This case is distinguishable since it involves commercial property in which the lessee was a secured creditor holding a trust deed. Also, the lease already imposed on the lessee the duty to provide its own services and maintenance. Judge Volinn, remarking on the complexity of a Code 365(h) issue, stated that "[i]f the deprivation of services, in terms of cost or impracticality, becomes sufficiently uneconomic to a lessee, the deprivation would, in effect, constitute an eviction, despite the language of the statute authorizing the lessee to remain in possession." 13 C.B.C. at 905.

*tral Transp. Co.*, 458 F.Supp. 1346 (E.D. Pa.1978). There the court stated that:

> "The leases were negotiated at arm's length; if they are less attractive now than they might be, the difference is attributable solely to changes in the economic climate and not to the debtor's financial reverses. The bankruptcy laws are intended as a shield, not as a sword. Their purpose is to minimize a fiscal chaos and disruption, not to aggravate it."

458 F.Supp. 1356. Ultimately, the observance of state law in a bankruptcy case will provide New York City rent controlled tenants with certainty and uniformity.

As a final consideration, the court is not convinced by the facts presented that a sound basis exists for a finding that "there is a reasonable likelihood that general creditors will derive a substantial or significant benefit from the proposed lease rejection." *In the Matter of Minges*, 602 F.2d 38, 44 (2d Cir.1979). Such a result seems dubious because (1) the non-debtor lessee's leasehold interest will remain intact under Code § 365(h) and (2) Friarton must provide essential services under applicable state law.[9] Given these considerations, rejection is inappropriate.

## CONCLUSION

For the foregoing reasons, the Debtor's motion to reject the unexpired "leases" of the rent controlled tenants is denied. The City's motion to dismiss counts three and four of the adversary proceeding is granted.

It is so ordered.

---

**9.** See also Footnote 3. A rejection motion should not be granted if the primary beneficiary is the debtor's shareholder.