**In re G. HEILEMAN BREWING COMPANY, INC., et al., Debtors in Possession.[1]**

**Bankruptcy No. 91B–10326 (FGC).**

United States Bankruptcy Court, S.D. New York.

May 30, 1991.

---

1. These Chapter 11 cases have been consolidated for procedural purposes only and are jointly administered by Order of this Court.

for Columbia Distributing Co., Inc. and Maletis, Inc. (Maletis).

## MEMORANDUM OF DECISION ON 11 U.S.C. § 365 REJECTION OF DISTRIBUTOR AGREEMENT [2]

FRANCIS G. CONRAD, Bankruptcy Judge.[*]

On January 24, 1991, Heileman filed a Chapter 11 petition in bankruptcy, 11 U.S.C. §§ 101, *et seq.*, and continues to operate as a debtor in possession under 11 U.S.C. §§ 1107(a) [3] and 1108.[4]

Bond Corporation North America (BCNA), a related debtor, is a holding company that directly or indirectly owns all of the issued and outstanding stock of the other related debtors. Heileman is the primary operating subsidiary of BCNA. Heileman brews and sells various brands of beer, directly and through its debtor and non-debtor subsidiaries, regionally throughout the United States. BBH U.S. Inc. owns 100% of the issued and outstanding shares of Heileman's common stock, is a holding company, and does not conduct active operations. Heileman Air Services, Ltd., a subsidiary of Heileman, provides maintenance services and sells fuel to parties using the airport facilities at LaCrosse, Wisconsin. Carling National Breweries, Inc., also a subsidiary of Heileman, owns real estate in Baltimore, Maryland that is used to produce a certain beer. Southside Distributing Company, Inc., also a subsidiary of Heileman, distributes beer and non-alcoholic beverages. For the purposes of this Memorandum of Decision, we refer to all the related debtors as "Heileman."

J. Friedman, and J. Orlan, Rosenman & Colin, New York City, for Unsecured Creditors' Committee (Committee).

M. Perkiel, Kaye, Scholer, Fierman, Hays & Handler, New York City, for G. Heileman Brewing Co., Inc., et al, debtors in possession (Heileman).

P. Romain, and M. Rutzick, Preston Thorgrimson Shidler Gates & Ellis, Portland, Or., R. Huffman, Baden Kramer Huffman Brodsky & Go, P.C., New York City, for amicus curiae, Beer & Wine Distributors Associations for Oregon, Michigan, North Carolina, South Carolina, Kentucky, Texas, Tennessee and Alabama (amicus).

N. Spicehandler, P. Schwed, Esq., C. Tusk, Graham & James, New York City, C. James, James, James & Denecke, Portland, Or.,

---

**2.** We have jurisdiction to hear this matter under 28 U.S.C. § 1334(b) and the general reference to this Court, dated July 10, 1984 (Ward, C.J.). This is a core matter under 28 U.S.C. §§ 157(b)(2)(A), (N), and (O). This Memorandum of Decision constitutes findings of fact and conclusion of law under F.R.Civ.P. 52, as made applicable to this contested matter by the Rules of Practice and Procedure in Bankruptcy, Rules 6006, 9014, and 7052.

**\*** Sitting by special designation.

**3.** 11 U.S.C. § 1107(a), **Rights, powers, and duties of debtor in possession,** provides:

(a) Subject to any limitations on a trustee serving in a case under this chapter, and to such limitations or conditions as the court prescribes, a debtor in possession shall have all the rights, other than the right to compensation under section 330 of this title, and powers, and shall perform all the functions and duties, except the duties specified in sections 1106(a)(2), (3), AND (4) of this title, of a trustee serving in a case under this chapter.

**4.** 11 U.S.C. § 1108, **Authorization to operate business,** provides:

Unless the court, on request of a party in interest and after notice and a hearing, orders otherwise, the trustee may operate the debtor's business.

Heileman seeks a 11 U.S.C. § 365(a)[5] rejection of a pre-petition "Wholesaler Appointment Agreement" (Distributor Agreement) with Maletis. The Distributor Agreement gives Maletis the right to distribute beer and non-alcoholic beverages within an exclusive territory in the State of Oregon. Maletis opposes the rejection because it fails to comply with the termination procedures set forth under Oregon's Franchise Protection Act for Trade Practices Relating to Malt Beverages (OFPA).[6]

The § 365(a) motion before us raises an issue of whether a motion to reject a beer distributorship contract under the Bankruptcy Code conflicts with Oregon's right to regulate intoxicating liquors under the Twenty–First Amendment to the United States Constitution.[7]

All parties presented papers and made representations supporting their respective positions. After a pre-hearing conference on the § 365 motion, it was agreed that we should decide the Twenty–First Amendment issue before evidence was taken.

Like the debtors before us, we are required to brew the hops of law from a series of U.S. Supreme Court decisions to arrive at a result that satisfies the debtors' thirst for rehabilitation and Maletis's quest for the high life in the State of Oregon. We deny Heileman's motion because, under the Twenty–First Amendment, OFPA preempts § 365.

Maletis objects to the proposed § 365 rejection on four grounds. First, the rejection fails to comply with OFPA termination procedures. Maletis argues OFPA termination procedures are mandatory because Heileman's property rights and duties are defined by State law. Second, 28 U.S.C. § 959(b)[8] requires Heileman to comply with State law as a debtor in possession. Third, Congressional policy is to give deference to State regulatory powers as represented by 11 U.S.C. § 362(b)(4).[9] Fourth, the Twenty–First Amendment mandates that any conflict between OFPA and § 365 be decided in favor of the State statute.[10]

Amicus supports Maletis's position that OFPA preempts § 365 because the Oregon statute directly regulates the sale, use or distribution of liquor within its borders. *See*, Twenty–First Amendment. *Amicus*

---

**5.** 11 U.S.C. § 365(a), **Executory contracts and unexpired leases,** provides:

> (a) Except as provided in sections 765 and 766 of this title and in subsections (b), (c), and (d) of this section, the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor.

**6.** Or.Rev.Stat. 474.005–.095. *See*, Appendix A attached. [Editor's note: Appendix A omitted from publication.]

**7.** The Twenty–First Amendment to the United States Constitution provides in pertinent part:

> Section 2. The transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited.

**8.** 28 U.S.C. § 959, **Trustees and receivers suable; management; State laws,** provides in part:

> (b) ... [A] trustee, receiver or manager appointed in any cause pending in any court of the United States, including a debtor in possession, shall manage and operate the property in his possession as such trustee, receiver or manager according to the requirements of the valid laws of the State in which such property is situated, in the same manner that the owner or possessor thereof would be bound to do if in possession thereof.

> *Id. See, Friarton Estates Corp. v. City of New York (In re Friarton Estates Corp.),* 65 B.R. 586 (Bkrtcy.S.D.N.Y.1986) (§ 365 did not entitle Chapter 11 debtor to reject leases to remove rent-controlled tenants and relet higher rentals); *Saravia v. 1736 18th St., N.W., Ltd. Partnership,* 844 F.2d 823 (D.C.Cir.1988) (Rejection of leases under § 365 did not relieve debtor of obligation to comply with local housing code regulations under § 959(b)). We do not reach this issue because we determine OFPA preempts § 365.

**9.** 11 U.S.C. § 362(b)(4) provides § 362(a)(1) of the automatic stay does not apply to "the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power...."

**10.** On March 13, 1991, Maletis filed an adversary proceeding against Heileman for *inter alia,* violation of Section 1 of the Sherman Act. 15 U.S.C. § 1. *Maletis, Inc. and Columbia Distributing Company, Inc. (In re G. Heileman Brewing Company, Inc.),* Adv.Pro. # 91–5250A (Bkrtcy. S.D.N.Y.). The adversary proceeding also asserts causes of action that involve many of the

offers the regulatory history and elaborates on the objectives behind Oregon's liquor statutes to support its position.

> [The Oregon liquor regulatory scheme assures] maintenance of a controlled, regulated, stable and competitive alcohol distribution system within the state; they encourage temperance; and they accomplish these objectives in an environmentally sound manner through the bottle bill.[11] Among the express purpose (sic) of these acts is to 'promote the orderly marketing of malt beverages,' a goal underlying Oregon's liquor regulatory system. Further, another effect of these two statutes [12] is to promote temperance in alcohol consumption by protecting local beer distributors from practices of manufacturers motivated to induce or coerce weaker distributors into stimulating sales of beer products.

*Amicus's* Memorandum of Law, page 13 (footnotes ours). Moreover, *Amicus* says:

> [T]hese state laws are likely to **benefit** the bankrupt (sic) estate and its creditors by imposing the performance of a deficient distributor under an existing agreement. If a distributor remains materially deficient after the 60–day correction period, termination may then occur. Either way, the bankrupt (sic) estate is protected and benefited.

*Amicus's* Memorandum of Law, page 17 (emphasis in original).

*Amicus* advises, however, that we should avoid declaring § 365 unconstitutional as applied to OFPA under the Twenty–First Amendment, adding "[we] have a duty 'to interpret a statute in a manner that renders it constitutionally valid.' " *Amicus's* Memorandum of Law, page 16, citing, *Communications Workers v. Beck,* 487 U.S. 735, 762, 108 S.Ct. 2641, 2657, 101 L.Ed.2d 634 (1988).

Heileman argues § 365 preempts OFPA because OFPA "was *not* enacted pursuant to Oregon's police powers to protect the public health and safety; its *sole purpose* was and is to protect Oregon beer distributors." Heileman's Memorandum of Law, page 6 (emphasis in original).

The premise of Heileman's position thus, is that to fall within the protection of the Twenty–First Amendment, the statute must be an exercise of the State's police power for the protection of the public's health and safety. Heileman asserts OFPA does not express any intention of protecting public health and safety, whereas, the Oregon Alcoholic Liquors Act, Or. Rev.Stat. 471.005, *et seq.,*[13] and Sale of Alcoholic Liquor by Individual Drink, Or. Rev.Stat. 472.010, *et seq.,*[14] clearly express such a purpose. But *see,* Or.Rev.Stat. 474.-105 (legislative finding that incorporates 471.030 and 471.115).

Moreover, Heileman says there is a clear conflict between § 365 and OFPA because Heileman's right to terminate the Distributor Agreement would not only be compromised by following OFPA's termination procedures, but also could deny Heileman's rejection right in toto because Maletis could cure the breach despite what Heileman perceives to be in its "best business judgment." [15]

Committee supports Heileman's position. It says that § 365 preempts OFPA to the

issues that would be resolved in a § 365 motion and allowance of claim determination.

**11.** The Beverage Container Law ("The Bottle Bill"). Or.Rev.Stat. 459.810–459.997. *See,* Appendix C attached. [Editor's note: Appendix C omitted from publication.]

**12.** The Oregon Exclusive Territory Act (OETA), Or.Rev.Stat. 474.105–.115 and (OFPA) Or.Rev. Stat. 474.005–.095. *See,* Appendix A attached. [Editor's note: Appendix A omitted from publication.]

**13.** Or.Rev.Stat. 471.030. *See,* Appendix B attached. [Editor's note: Appendix B omitted from publication.]

**14.** Or.Rev.Stat. 472.030. *See,* Appendix D attached. [Editor's note: Appendix D omitted from publication.]

**15.** *See,* e.g. *Control Data Corporation v. Zelman (Matter of Minges),* 602 F.2d 38, 43 (2d Cir.1979); *In re Stable Mews Associates, Inc.,* 41 B.R. 594 (Bkrtcy.S.D.N.Y.1984). We postponed the evidentiary hearing on the "business judgment" test at the conclusion of oral arguments because the preemption issue could moot the need for an evidentiary hearing. Our declaration the Twenty–First Amendment preempts § 365 requires Heileman to comply with OFPA termination procedures and renders the evidentiary hearing moot.

extent Oregon attempts to restrict Heileman's right to reject the Distributor Agreement with Maletis. Committee says the conflict between OFPA and § 365 is irreconcilable because Maletis could cure its defective performance and preclude Heileman from terminating the Distributor Agreement "even though the contract might be too expensive or other business factors are present which mitigate in favor of using an alternative distributor." Committee's Memorandum of Law, page 2.

Committee argues to take OFPA out from under the protection of the Twenty–First Amendment by stating OFPA is not an act of the State's police power to protect the public safety, health and welfare. Rather, Committee says, OFPA "was simply enacted to regulate private contractual disputes between third parties." Committee's Memorandum of Law, page 8. Thus, Maletis's analogy to § 362(b)(4) is inapplicable. Moreover, Committee argues not only does OFPA not protect public health and welfare, but it also does not promote temperance; thus, it is not protected by the Twenty–First Amendment.

As a final argument, Committee proffers yet another reason the Bankruptcy Code, as a Congressional exercise of power under Article I, Section 8 of the U.S. Constitution,[16] should preempt OFPA; namely, 11 U.S.C. § 525(a).[17] Committee argues:

> If the OLCC [Oregon Liquor Control Commission] were to prevent [Heileman] from using a new distributor in Oregon solely because [Heileman] exercised its right, as a debtor-in-possession, to reject the Maletis contract, the OLCC's actions would frustrate the Bankruptcy Code's rehabilitative goals.

Committee's Memorandum of Law, page 15. Committee urges us to exercise our equitable powers under 11 U.S.C. § 105,[18] in the event we determine OLCC frustrates Heileman's business judgment, to chose Mt. Hood as Maletis's replacement.

Maletis calls Heileman's, and Committee's, proposition that the Twenty–First Amendment requires public safety, health and welfare purpose, a "red herring." Maletis's Reply Memorandum of Law, page 9. Maletis says its rights under the Distributor Agreement are not merely contractual but rise to the level of a property interest and, as such, are not subject to § 365. Our Decision today does not require us to reach this last issue.

The matters we must consider are whether OFPA squarely conflicts with § 365 and whether OFPA is an exercise of Oregon's "central power" under the Twenty–First Amendment.

## DISCUSSION

"As early as *Gibbons v. Ogden,* 9 Wheat 1 [6 L.Ed. 23] (1824), Chief Justice Marshall stated the governing principle— that 'acts of the State Legislatures ... [which] *interfere with,* or are contrary to the laws of Congress, made in the pursuance of the constitution,' are invalid under the Supremacy Clause. *Id.,* at 211 (emphasis added)." *Perez v. Campbell,* 402 U.S. 637, 649, 91 S.Ct. 1704, 1711, 29 L.Ed.2d 233 (1971), citing, *Gibbons v. Ogden,* 22 U.S. (9 Wheat) 1, 6 L.Ed. 23 (1824). "[Our] function is to determine whether a challenged state statute 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress,' " *Perez v. Campbell, supra,* 402 U.S. at 649, 91 S.Ct. at 1711, citing, *Hinds v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941), or whether it can

---

**16.** Article I, Section 8, clause 4 of the U.S. Constitution provides in part:

> To establish ... uniform Laws on the subject of Bankruptcies throughout the United States.

**17.** 11 U.S.C. § 525(a), **Protection against discriminatory treatment,** provides in pertinent part:

(a) ... [A] governmental unit may not deny, revoke, suspend, or refuse to renew a license,

permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against ... a person that is or has been a debtor under the Bankruptcy Act....

**18.** 11 U.S.C. § 105(a), **Power of court,** provides in part:

(a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title....

be harmonized with other competing Federal interests, which in this matter, is the rehabilitation of the debtor. "[T]here is no bright line between Federal and State powers over liquor ...," *California Retail Liquor Dealers Association v. Midcal Aluminum, Inc.,* 445 U.S. 97, 110, 100 S.Ct. 937, 945–46, 63 L.Ed.2d 233 (1980), nor is there a bright line between a debtor's right to reject executory contracts and the State law property rights, both common law and statutory, which underpin a contract. Our inquiry, thus, must begin with a construction examination of the Oregon statute and the Bankruptcy Code.

After the Twenty–First Amendment repealed National prohibition in 1933, Oregon, consistent with its prior practice since 1821, devised a system of comprehensive State regulation to control distilled spirits, beer, and wine.

Oregon's current alcohol regulatory scheme is set forth by the Oregon Liquor Control Act, Or.Rev.Stat. 471.005, *et seq.* The express and admitted purpose of the Oregon liquor system is to protect the safety, welfare, health, peace, and morals of the people of the Oregon, and to encourage the development of all Oregon industries. Or.Rev.Stat. 471.030. The Oregon Liquor Control Commission regulates the commerce of alcoholic beverages.

Oregon's Beverage Container law,[19] our Nation's first "Bottle Bill," imposes a mandatory refundable deposit for the purpose of protecting the environment from waste. The Bottle Bill had a flaw in its cycle. The distributor was guaranteed to collect a refund from the manufacturer for every empty container they returned to the manufacturer; the manufacturer, however, had no assurance its "buy back" would not exceed the number of containers upon which it initially collected a deposit.

In response to this flaw and other needs, Oregon adopted the Exclusive Territory Act (OETA) in 1981, Or.Rev.Stat. 474.105–115.[20] OETA promoted the orderly marketing of beer and inter-brand competition, implemented record-keeping, and facilitated the collection of revenue. Appendix A, 474.105.

Although the statutory presentation is somewhat confusing due to the renumbering by Legislative Council in 1989, OFPA nevertheless ties into OETA because OFPA is an integral part of "all pervasive" regulatory schemes designed to control all aspects of liquor distribution. In addition to distribution, OFPA regulates consumption, distributor territory, the legal relationship between manufacturers and distributors, and the procedure for terminating wholesale distribution contracts.

The procedure for termination under OFPA, Or.Rev.Stat. 474.005–.095, Trade Practices Relating to Malt Beverages, directs that a manufacturer may only terminate a distribution agreement with its distributor for "good cause." Or.Rev.Stat. 474.011(1), Appendix A attached. [Editor's note: Appendix A omitted from publication.] Where the distributor fails to comply with a material and reasonable provision of the agreement that is significant to the business relationship, a manufacturer must give written notice to the distributor of the breach within two years of acquiring knowledge of such breach. Termination cannot occur until 90 days after the distributor's receipt of written notice. The distributor is given 30 days to submit a plan of corrective action to comply with the agreement, and not less than 60 days to correct the noncompliance. Upon termination for "good cause" under OFPA, a distributor is entitled to reasonable compensation from the manufacturer for certain costs. Or.Rev.Stat. 474.011(2), Appendix A attached. [Editor's note: Appendix A omitted from publication.] If the termination is in "bad faith or for other than good cause," the distributor is entitled to additional compensation, including the fair

---

19. Or.Rev.Stat. 459.810–890. *See,* Appendix C attached. [Editor's note: Appendix C omitted from publication.]

20. *See,* Appendix A attached. [Editor's note: Appendix A omitted from publication.] Or.Rev.

Stat. 474.105–.115 (OETA) was originally codified in Chapter 471 dealing with the regulation of liquor, *see,* Appendix B, but was renumbered in 1989 by Legislative Counsel.

market value of assets used in distributing the manufacturer's products and the good will of the business. Or.Rev.Stat. 474.-011(3) and (4), Appendix A attached. [Editor's note: Appendix A omitted from publication.] In addition to the penalties in 474.-011(3) and (4), any party aggrieved by a violation of 474.005–.095 may be entitled to injunctive relief, damages for the violation, attorney's fees and costs, and damages for any decrease in value of the distributor's business.

The agreement between the manufacturer and the distributor must be filed with the OLCC. Or.Rev.Stat. 474.115(1), Appendix A. OETA permits a change only upon written notice by the manufacturer. The change must be filed with the OLCC. Or.Rev.Stat. 474.115(3), Appendix A. The manufacturer must also verify to the OLCC that the level of services will not be affected by the change, and that all of the rights of the distributor and duties of the manufacturer in any written agreement has been recognized.

Although the legislative purposes are contradictory, i.e., to discourage alcohol abuse, for example, 471.030, and to encourage distribution of liquor, 474.105, we conclude that the Bottle Bill, OETA, OFPA, and Oregon's liquor laws are all integral parts of Oregon's alcohol regulatory scheme to protect its interest in the transportation, importation, delivery, and use of liquor; thus fulfilling the express purpose behind the Twenty–First Amendment.

Section 365 is also part of a unabridged regulatory scheme, namely, the promulgation of uniform bankruptcy laws under Article I, Section 8, clause 4 of the United States Constitution.

Section 365(a) provides for the regulation of executory contracts. A § 365(a) contested hearing is a fluid event dictated by the needs of the parties, especially a debtor. It may or may not immediately resolve the damage question, but a successful business judgment rejection terminates the parties' relationship. There are rarely contested hearings. A termination under OFPA, however, does not necessarily terminate the parties' relationship. A defaulting party is allowed to cure the default and, if cured, the parties' agreement continues. A continuation may not be in the best interests of the debtor, its creditors, or the equity holders of its estate. Thus, there is a clear and direct conflict between § 365 and OFPA.

With the construction of both statutes clearly established, we proceed to the constitutional question of whether Oregon's OFPA, enacted under the Twenty–First Amendment, irrevocably conflicts or may be harmonized with § 365.

■ Where there is no conflict between the applicable State and Federal law, and the matter falls in the Federal jurisdiction, the United States Supreme Court will enforce the Federal statute. *See, United States v. Frankfort Distilleries, Inc.*, 324 U.S. 293, 65 S.Ct. 661, 89 L.Ed. 951 (1945). In *Frankfort*, the Twenty–First Amendment did not bar prosecution under the Federal Sherman Act of producers, wholesalers, and retailers charged with conspiring to fix and maintain the retail prices of alcohol beverages. Central to the Court's conclusion, the defendants were found to have engaged in interstate trade outside the State's jurisdiction. The Court made clear the "Sherman Act is not being enforced in this case in such a manner as to conflict with the law of Colorado. Those combinations which the Sherman Act makes illegal ... are expressly exempted from the scope of the Fair Trade Act of Colorado...." *Id.*, 324 U.S. at 299, 65 S.Ct. at 664.

■ Where, however, there is conflict between Federal and State law and the State Law is within its "jurisdiction" and serves a direct Twenty–First Amendment interest, the State law will prevail:

The Court has considered the power of the States to pass liquor control regulations that burden the Federal Government in four cases since the ratification of the Twenty-first Amendment.... In each of those cases, we concluded that the State has no authority to regulate in an area or over a transaction that fell outside of its jurisdiction....

At the same time, however, within the area of its jurisdiction, the State had 'virtually complete control' over the importation and sale of liquor and the structure of the liquor distribution system....

*North Dakota v. United States,* —— U.S. ——, 110 S.Ct. 1986, 1992, 109 L.Ed.2d 420 (1990) (plurality decision) (Scalia, J. concurring) (citations omitted). *North Dakota* upheld the State's labelling and reporting regulations as being within the States's core powers to regulate the distribution of liquor under the Twenty–First Amendment against a Federal statute that required all liquor for consumption on military bases be procured from the most competitive price.

Historically, the United States Supreme Court has afforded great deference to the State's power to pass liquor laws under the Twenty–First Amendment promoting temperance, orderly market conditions within its borders, or raising revenue. *See e.g., Indianapolis Brewing Co. v. Liquor Control Commission,* 305 U.S. 391, 394, 59 S.Ct. 254, 255, 83 L.Ed. 243 (1939) ("[t]he further claim that the law [Michigan State liquor law prohibiting Michigan distributors from selling beer brewed in another State which by its law discriminates against Michigan beer] violates the due process clause is also unfounded. The substantive power of the State to prevent the sale of intoxicating liquor is undoubted."); *Mahoney, Liquor Control Commissioner v. Joseph Triner Corp.,* 304 U.S. 401, 404, 58 S.Ct. 952, 82 L.Ed. 1424 (1938) (a Minnesota statute was sustained that prohibited a licensed manufacturer or wholesaler from importing any brand of intoxicating liquor containing more than 25% of alcohol by volume and ready for sale without further processing. Held equal protection clause was not applicable and there was no need to discuss whether the statute was a reasonable regulation); *State Board of Equalization v. Young's Market Co.,* 299 U.S. 59, 63, 57 S.Ct. 77, 81 L.Ed. 38 (1936) (rejected the argument that a State could not regulate importations except for the purpose of protecting the public health, safety or morals; held the right of a State to prohibit or regulate the importation of intoxicating liquor is not limited by the commerce clause).

Currently, the United States Supreme Court has overruled their prior rulings in *Mahoney* and *Young's Market, supra,* to now hold the commerce clause and other provisions of the United States Constitution must be considered in conjunction with State laws enacted under the Twenty–First Amendment. *Thus, the issues and interests of a debtor under the Bankruptcy Code viv a vis the Twenty–First Amendment must be considered a concrete contest.*

Both the Twenty–First Amendment and the Commerce Clause are parts of the same constitution. Like other provisions of the Constitution, each must be considered in the light of the other, and in the context of the issues and interests at stake in any concrete case.

*Hostetter v. Idlewild Liquor Corp.,* 377 U.S. 324, 332, 84 S.Ct. 1293, 12 L.Ed.2d 350, 356 (1964) (held that while the Twenty–First Amendment permits a State to restrict the importation of liquor destined for consumption within its borders, it does not give the State exclusive control over commerce in intoxicating liquors). *Accord, Healy v. The Beer Institute, Inc.,* 491 U.S. 324, 109 S.Ct. 2491, 105 L.Ed.2d 275 (1989); *Brown–Forman Distillers, Corp. v. New York State Liquor Authority,* 476 U.S. 573, 106 S.Ct. 2080, 90 L.Ed.2d 552 (1986); *Bacchus Imports, Ltd. v. Dias,* 468 U.S. 263, 275–276, 104 S.Ct. 3049, 82 L.Ed.2d 200, 212 (1984) (commerce clause restrains a State's power to protect its local industry where there is no clear State purpose "to promote temperance or to carry out any other purpose of the Twenty–First Amendment.").

Central to our ruling today, we ask what avowed state interest is the Twenty–First Amendment designed to protect?

■ Contrary to Heileman's position, the United States Supreme Court has held a State liquor law does not have to promote temperance as its sole purpose before it will fall within the protection of the Twenty–First Amendment:

[N]othing in the Twenty–First Amendment or any other part of the Constitution requires that state laws regulating the liquor business be motivated exclusively by a desire to promote temperance.

*Joseph E. Seagram & Sons v. Hostetter,* 384 U.S. 35, 47, 86 S.Ct. 1254, 1262, 16 L.Ed.2d 336 (1966) (footnote omitted), *overruled on other grounds, Healy v. The Beer Institute, Inc., supra,* 491 U.S. at 342–43, 109 S.Ct. at 2502–03, 105 L.Ed.2d at 292.

 Moreover, we reject Heileman's contention that a State liquor law must have a public health, safety, or welfare purpose to be valid under the Twenty–First Amendment.[21] There is nothing about temperance, protection of health, safety, and morality, or the promotion of social welfare in the plain language of the Twenty–First Amendment. The Twenty–First Amendment expressly refers to transportation, importation, delivery, and use of liquor. Thus, it is our view that so long as the State law serves the State's interest in the "transportation," "importation," "delivery," or "use" of liquor, it fulfills the express purpose behind the Twenty–First Amendment, *see, California Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc., infra,* 445 U.S. at 107, n. 10, 100 S.Ct. at 944, n. 10, even though, as here, the statute appears to protect Oregon distributors from competition. For purposes of this Decision, it is irrelevant to us whether it also promotes temperance, protection of the health, safety, and morality, or the promotion of social welfare. Thus, Maletis's analogy to § 362(b)(4), which does require a public health, safety, or welfare purpose, is inapplicable.

Although the United States Supreme Court continues to afford State liquor laws a strong presumption of validity, they now require proof that a direct interest under the Twenty–First Amendment is being served by the State law where there is a conflict between the State law and Federal law. In other words, if the State law does not directly promote a Twenty–First Amendment interest, then the Federal law will prevail:

[W]hen, as here, a state regulation squarely conflicts with the accomplishment and execution of the full purposes of federal law, and the State's central power under the Twenty–First Amendment of regulating the times, places, and manner under which liquor may be imported and sold is not directly implicated, the balance between state and federal power tips decisively in favor of the federal law, and enforcement of the state statute is barred by the Supremacy Clause.

*Capital Cities Cable, Inc. v. Crisp, Director, Oklahoma Alcoholic Beverage Control Board,* 467 U.S. 691, 716, 104 S.Ct. 2694, 2709, 81 L.Ed.2d 580, 600 (1984) (footnote omitted) (State's ban against cable operators' carrying out-of-state alcoholic beverage commercials over their systems conflicts with FCC's regulations which require signals be carried without deletion or alteration. Twenty–First Amendment does not save the State's ban from preemption because State's power to regulate liquor importation and sale was not directly implicated). *See, Bacchus Imports, Ltd. v. Dias, supra; California Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc.,* 445 U.S. 97, 113–114, 100 S.Ct. 937, 947, 63 L.Ed.2d 233 (1980) (upheld a State Court's determination that its liquor laws violated Sherman Act where there was no clear evidence to support a direct Twenty–First Amendment purpose. The Court stated in *dicta,* "[w]e need not consider whether the legitimate state interests in temperance and the protection of small retailers ever could prevail against the undoubted federal interest in a competitive economy. The

---

**21.** The United States Supreme Court has rejected the contention that a challenged State liquor law relates to the protection of health, safety, and morality, or to the promotion of their social welfare. *Joseph S. Finch & Co. v. McKittrick, Attorney General,* 305 U.S. 395, 59 S.Ct. 256, 83 L.Ed. 246 (1939). The validity of that ruling may be in doubt, however, because *McKittrick* reached its conclusion on the premise the commerce clause did not limit a State law enacted under the Twenty–First Amendment. As discussed, *supra,* in reference to *Healy, Brown–Forman,* and *Bacchus, McKittrick's* commerce clause holding has been overruled.

unsubstantiated state concerns put forward in this case simply are not of the same stature as the goals of the Sherman Act."); *Miller v. Hedlund,* 813 F.2d 1344, 1352 (9th Cir.1987) (remanded to District Court to determine if there was a State interest under the Twenty–First Amendment in the State's control over the pricing of beer and wine and, if so, whether that interest overcomes Sherman Act objections), *cert. denied,* 484 U.S. 1061, 108 S.Ct. 1018, 98 L.Ed.2d 983 (1988), *and on remand, Miller v. Hedlund,* 717 F.Supp. 711, 715–717 (D.Or.1989) (ruled OLCC failed to prove the statute served any interest under the Twenty–First Amendment and held State law violated Sherman Act).

OFPA and its related statutes were enacted in the public interest under the Twenty–First Amendment. Together, all the laws benefit Oregon's public and are a direct exercise of Oregon's "core" power to regulate alcohol. OFPA is unquestionably a necessary component to Oregon's valid State interest in assuring stable, long-term distributor agreements.

As a Court, we should avoid any construction that renders a statute unconstitutional. Unfortunately, we cannot avoid the clear and acute collision between the statutes here. The Twenty–First Amendment raises Oregon's direct interest in alcohol regulation within its borders to a greater plateau than the competing bankruptcy interest. OFPA satisfies an articulated public policy and is actively supervised by Oregon's liquor board. Article I in this matter must yield to the later enacted Twenty–First Amendment.

Accordingly, we hold OFPA preempts § 365 under the Twenty–First Amendment. Maletis is to settle an Order in accordance with this Memorandum of Decision.